Chicago Title and Trust Company, Appellee, v. William
J. Cleary, Appellant.

Gen. No. 38,440.

Opinion filed June 22, 1936.  Both rehearings denied
and opinion modified July 6, 1936.

STEBBINS, McKINLEY & PRICE and JOHN A. BROWN,
all of Chicago, for appellant; LEWIS A. STEBBINS, of
counsel.

KIRKLAND, FLEMING, GREEN & MARTIN, GEORGE GIL-
LETTE, ELMER M. LEESMAN, CHARLES F. GRIMES and
CARL F. FAUST, all of Chicago, for appellee.

MR. JUSTICE HEBEL delivered the opinion of the
court.

This action was instituted by the Chicago Title and
Trust Company against William J. Cleary in the mu-
nicipal court of Chicago to recover $481.80, alleged to

be due on an open account. On motion of the Chicago Title and Trust Company its cause of action was non-suited on April 16, 1934. The proceeding was heard before the court and a jury on the second amended counterclaim of Cleary filed November 15, 1933, in that litigation, in which he makes claim upon a contract in the nature of an escrow executed by the company, and at the conclusion of the hearing the jury returned a verdict in favor of Cleary and against the company for $150,844.50 on June 29, 1934. On August 27, 1934, the court entered an order as follows:

"This cause coming on for hearing upon motion of plaintiff and counter-defendant, Chicago Title & Trust Company, a corporation, heretofore entered herein June 29, 1934, for a directed verdict, and the court being fully advised in the premises sustains said motion.

"This cause coming on for further proceedings herein, it is considered by the Court that final judgment be entered for the plaintiff and counter-defendant Chicago Title and Trust Company, a corporation, notwithstanding the verdict, and against the defendant and counter-plaintiff, William Cleary, without costs, it appearing to the Court that no costs have accrued to either party to this cause."

The pleadings upon which this proceeding was had consist of the second amended counterclaim of Cleary which sets forth a certain escrow agreement between the company and certain other persons therein named, including Cleary, under which Cleary was, upon certain conditions set forth in said escrow agreement, entitled to receive from the company $100,000 of the bonds of the Chicago Harbor Lumber Company and $10,000 in cash.

The company filed a reply in which it denies that it is indebted, individually and as trustee, or in either capacity, to Cleary in the sum of $150,000, or in any amount, as damages arising and growing out of a certain transaction for which Cleary has filed his suit in this cause against the company.

The company further denies that Cleary entered into a certain escrow agreement with the Chicago Title & Trust Company, a corporation, and Fred T. Becks, president of Chicago Harbor Lumber Company, G. Frank Croissant and Robert Owens in the words and figures set forth in paragraph 2 of the counterclaim; denies that said escrow agreement was ever delivered to or accepted by the company and designated by the company as its escrow No. 70521; denies that in pursuance of said escrow agreement there was deposited with the company the several deeds and other instruments in writing therein described, together with certain amounts in cash; and denies that it thereupon became and was the duty of the company to receive and distribute said deposits in accordance with the terms of said escrow agreement.

In the discussion of the various questions called to our attention, when referring to the parties we have adopted the method used in the several briefs filed in this case, and refer to William J. Cleary, sometimes designated as defendant and sometimes designated as counter-plaintiff, as Cleary, and the Chicago Title and Trust Company, sometimes designated as plaintiff and sometimes designated as counter-defendant, as the company.

Cleary's theory of the case is that the escrow agreement dated November 26, 1927, was duly executed by all the parties thereto, and under the terms thereof Cleary became entitled to $10,000 in cash and $100,000 in bonds of the Chicago Harbor Lumber Company, or the value thereof.

The company admits that the theory of defense given by Cleary is substantially correct, but denies that it is a complete statement of its defense. It is the company's theory, also, that the alleged escrow agreement upon which Cleary's claim is founded is spurious and that it was manufactured out of a carbon copy of the escrow agreement of November 21, 1927; that the receipt of Cleary produced as evidence of deposits of

money and stock under that spurious agreement is a forgery, and that a copy of the spurious agreement produced by one of Cleary's witnesses, who testified that he obtained that copy from the company, is likewise spurious.

The question of fact involved in this litigation is whether the escrow agreement was duly executed. The company denies that it was, and much of the testimony in the record bears upon this question.

It is well to have in mind the escrow agreement in the instant case, dated November 26, 1927, and setting forth substantially that certain deposits of quitclaim deeds were made to convey the property described therein, also the deposit of quitclaim deed from William Cleary and Mary B. Cleary, his wife, to the Chicago Harbor Lumber Company, purporting to convey the same property. This provision follows:

"The Chicago Harbor Lumber Company will deposit with you (meaning the Chicago Title & Trust Company) the sum of $14,616.67. Chicago Harbor Lumber Company will deposit with the Company Trust Indenture in duplicate, made by themselves to the Chicago Title and Trust Company, Trustee, dated October 15, 1927, securing bonds in the principal sum of $200,000, and purporting to convey . . ." the premises described in the trust deed.

"William Cleary deposits with the Company four contracts dated August 15, 1927, between the Union Bank of Chicago, Trustee, as sellers, and Isabele M. Cleary, as purchaser purporting to convey . . ." the premises therein described.

Then it is provided in the agreement that the property therein described with respect to the several sites is subject to certain provisions of the escrow contract. Then follows this provision:

"Chicago Title and Trust Company to deliver One Hundred Thousand Dollars in bonds to William J. Cleary, when certified, also $10,000 cash and stock; deliver mortgage policy to Chicago Title and Trust Company, Trustee.

"G. Frank Croissant directs you (meaning the Company) herewith, out of the $14,616.67 directed to be paid to him hereunder, to pay an amount sufficient to clear all prior liens and the encumbrances on premises first and second herein described, so that the policy herein can issue subject to the objections enumerated as affects Nos. 1 and 2."

From the facts as they appear in the record, the company denies that the Chicago Harbor Lumber Company deposited with it the sum of $14,616.67, provided in the escrow agreement to be deposited, but proof is offered by Cleary that this sum was deposited, together with $10,000 that was to go to Cleary, making a total of $24,616.67, and there is evidence to the effect that the bonds of the Chicago Harbor Lumber Company were delivered to the company and by it certified and delivered to the Trust Department of the company; that on November 28, 1927, Cleary notified the company not to deliver the bonds to the Chicago Harbor Lumber Company, until he had been paid the amount of money, bonds and stock due him under the contract, but that on November 30, 1927, the company delivered $125,000 bonds of the Chicago Harbor Lumber Company to Kirkeby, Watts & Company.

In passing upon the questions raised in the briefs of the parties to this litigation, we are of the opinion that two points are to be considered. First, whether the verdict returned by the jury for Cleary in this action was against the manifest weight of the evidence; and second, whether from the facts and the law applicable to the questions, the court was justified in entering judgment for the company, notwithstanding the verdict of the jury.

In the discussion of the first point as to whether the evidence established the authenticity of the escrow agreement bearing the alleged date of November 26, 1927, the company contends that the verdict of the jury is manifestly against the weight of the evidence and that Cleary's claim is a frame-up in which he and three of his witnesses have conspired to defraud the

company, and in seeking to establish this fact the company offers evidence that there never was an escrow agreement between the parties bearing the date above set forth and in the form claimed to have been executed; that it never was in the possession of the company, nor at the time when claimed to have been executed was it examined by any of the officials of the company, to which fact they so testified.

There is a sharp conflict in the evidence regarding the escrow agreement now under consideration. Cleary's evidence is to the effect that one of his witnesses testified he took up the matter with Mr. Marriott of the company, who, it is claimed, after a discussion stated he would have the whole thing rewritten, and a few days later Cleary had in his possession the original copy of the escrow agreement, which was signed by the parties at Cleary's request, together with a carbon copy of the original, and that the original of this escrow agreement was delivered to Miss B. B. Kohn, the young lady employed in the Escrow Department, and at the time he delivered the original to this woman it bore the signatures of the parties to it. There is other evidence that the escrow agreement was seen in the possession of the company, and it is upon an issue of fact that the jury was required to consider the evidence and determine the question directed to it by the court. We might go into the facts more fully, but believe they are sufficiently set forth for the purpose of calling attention of counsel to the fact that the issue was one for a jury, and if we reach the conclusion that the judgment must be reversed and the cause remanded for further trial it will not be necessary at this time to pass upon the merits of the controversy.

Another question here in conflict is the purported receipt for the money claimed to have been deposited with Mr. Marriott, who has since died. It is claimed by the company that this receipt for the funds was a forgery; that the money was never received and was never in the possession of the company. Therefore, it

was important that the jury be properly instructed. The following instruction is complained of by the company:

"The court instructs the jury that it is incumbent upon Cleary to show by a preponderance of the evidence that the document, Cleary's Exhibit 4, dated November 26, 1927, was executed by the parties and delivered to the Title and Trust Company; and that it is necessary for Cleary, by a preponderance of the evidence, to show that there was deposited with the Title and Trust Company the sum of $24,667.67 in cash and 667 shares of the capital stock of the Chicago Harbor Lumber Company as part of the property to be delivered under an escrow agreement.

"If you find that Cleary has proven these facts by a preponderance of the evidence, then you will find in favor of Cleary in the sum of $10,000 plus interest at the rate of five per cent per annum from January 1, 1928, to date, and an additional sum of $100,000 (the face value of the bonds in question) with interest at six and one-half per cent from January 1, 1928 to October 15, 1933.

"If you find that it has not been proven by a preponderance of the evidence that the document known as Cleary's Exhibit 4 was executed and delivered to the Title and Trust Company, and that the aforesaid deposits were not made, you will find the issues in favor of the company."

Numerous objections have been made to this instruction, two of which have a material bearing upon the form in which it is given. The first is that the jury was not instructed that it was necessary for Cleary to establish not only that the escrow agreement was executed as contended, but also to establish by the evidence that there was a delivery of the agreement to the Chicago Title and Trust Company and acceptance by it, but the record is silent regarding the fact that the company by its proper officer accepted the agreement. It is to be noted that one of the specific objec-

tions made by the company to the instruction in question before the jury retired is that the instruction takes away from the jury the consideration of the question of fact whether all the conditions of the escrow agreement were fulfilled, or complied with and performed. The escrow agreement in question is not signed by the company, so that the company in the acceptance, either express or implied, of Cleary's performance, as required by the escrow agreement, would be liable. We believe it was necessary for Cleary to establish this fact, and that it was error for the court to fail to instruct the jury that delivery in effect was sufficient; also that the court should not have given the instruction in this form. It would seem that the question of acceptance is an elementary one and hardly needs the support of authorities.

As to the second objection to the instruction, the company complains of the form of the third paragraph, wherein the jury is instructed if it finds failure of proof both as to the validity of the escrow agreement and the money deposited, it may return a verdict for the company.

If from the instruction in the form given it appears there was a failure to show by a preponderance of the evidence that the document known as Cleary's Exhibit 4, was executed and delivered to the company and that the aforesaid deposits were not made, the jury must necessarily find the issues for the company.

The direction is rather confusing in that it couples the execution and delivery of the escrow agreement with the performance of the provisions provided for in the contract. It may be that the jury reached the conclusion that the escrow agreement was executed, delivered and accepted, but the proof did not sustain delivery of the money contended for by Cleary, and therefore this instruction was not clear in directing the jury in this respect.

It may be added in this connection that where there is a conflict in the evidence, counsel in the discussion of

the facts should hesitate to make any statement that might be considered prejudicial. The company complains of the conduct and many of the remarks of counsel for Cleary as tending to prejudice the jury and inflame their minds against the company. We have examined the record and find a number of complaints, but are of the opinion that it was not necessary to make the remarks that are challenged, as the facts were close and charges of fraud were part of the procedure. Taking into consideration the closeness of the facts and the improper instruction, together with counsel's remarks, we are of the opinion that the court should have granted a new trial in this case.

We are further of the opinion that the court in ordering that judgment be entered for the company, notwithstanding the verdict, was compelled to pass upon the weight of the evidence, and this was error. Counsel for both Cleary and the company agreed in open court that in reaching a conclusion of this kind the court could not weigh the evidence and enter judgment.

Another question of importance here is whether the escrow agreement was executed, delivered and accepted by the company. As we have stated above, there is a sharp conflict in the evidence as to whether the documents offered in evidence were forged, and for that reason the question was one for the jury. In passing upon the facts, and the credibility of the witnesses, and in weighing the evidence after the jury had returned a verdict for Cleary, the court erred; also in entering judgment in favor of the company, notwithstanding the verdict of the jury.

Other questions have been called to our attention, but in view of the conclusions we have reached it will not be necessary to consider them.

The judgment in favor of the company is reversed and the cause is remanded for further trial upon the issues joined by the pleadings of the parties.

*Judgment reversed and cause remanded.*

HALL, P. J., and DENIS E. SULLIVAN, J., concur.