Chicago Title and Trust Company, Plaintiff, v. William J. Cleary, Defendant.
William J. Cleary, Appellee, v. Chicago Title and Trust Company, Appellant.

Gen. No. 41,469.

BURKE, P. J., dissenting in part.

Opinion filed May 5, 1943.

KIRKLAND, FLEMING, GREEN, MARTIN & ELLIS, HAROLD L. REEVE, CHARLES F. GRIMES and CARL F. FAUST, all of Chicago, for appellant; HOWARD ELLIS, of Chicago, of counsel.

ORR, VAIL, LEWIS & ORR and JOHN O'C. FITZGERALD, all of Chicago, for appellee.

MR. JUSTICE KILEY delivered the opinion of the court.

This is an appeal from the second trial of a cross-action for damages for breach of an alleged escrow agreement, with verdict and judgment for plaintiff for $110,000. In the first trial verdict was for plaintiff for $150,844.50, and judgment notwithstanding was for defendant, and on appeal this court (*Chicago Title*

& Trust Co. v. Cleary, 286 Ill. App. 97) reversed the judgment and remanded the cause for a trial on the merits.

The Trust Company sued Cleary in 1932 for $481 on an open account. Cleary counter-claimed for damages for breach of contract and the Trust Company took a nonsuit. The first trial was on Cleary's second amended counter-claim. The second trial was on his sixth amended counter-claim, as amended, in which he charged the Trust Company with breach of an alleged escrow agreement dated November 26, 1927, between the Trust Company and Cleary, Chicago Lumber Company, Croissant and Owens, under which he claimed he was entitled to $100,000 of Chicago Lumber Company bonds and $10,000 cash. He alleged in one count performance of conditions precedent to the Trust Company's obligation to deliver the bonds and pay the cash to him; and in another count that an anticipatory breach waived necessity of fulfillment of the conditions precedent. The issues made up by the pleadings were whether the instrument sued on by Cleary was genuine or spurious; whether, if genuine, it was accepted by the Trust Company; whether, if genuine, conditions precedent had been fulfilled, or waived by an anticipatory breach through the Trust Company's delivery of the Lumber Company's bonds to Kirkeby, Watts & Company instead of Cleary; and whether Cleary approved and ratified the delivery to Kirkeby, Watts & Company.

The second trial lasted 21 weeks and was vigorously contested. Extraneous issues were introduced which contributed to the length of the trial. On the irrelevant issue whether Attorney Reeve of the Trust Company had been a Chicago policeman, sixteen witnesses, including four attorneys and two municipal court judges, testified. The record discloses a bizarre proceeding, in which matters presented ranged from a motion based on the statute of Westminster and

Gloucester to quotations from "Alice in Wonderland." Many important witnesses are dead. Some died before, and others after the first trial and one witness committed suicide during the second trial.

November 11, 1927, the Trust Company agreed in writing with Croissant, Owens and Chicago Harbor Lumber Company, by its President, Becks, to act as escrowee of deeds from the latter parties and Cleary, and of deposits of money by the Lumber Company which the Trust Company was to disburse as directed. The escrow was designed to convey to the Lumber Company several parcels of land which, together with other land conveyed to it by one Lorenz under a separate escrow, the Lumber Company was to convey in trust to the Trust Company, as Trustee, to secure a bond issue of $200,000. The Lumber Company deposited the trust deed, under the escrow, covering the several parcels, as Sites 1, 2, 3, 4, 5 and 6 (Site No. 4 was later stricken out of the trust deed); and agreed to ".will deposit" "*herewith*" $14,616.67 and "will deposit" $12,000 of the bonds. The escrow provided that when the Lorenz deed was deposited in the escrow, all deeds therein should then be recorded and when the Trust Company was prepared to issue its guaranty policy, subject to objections not pertinent here, it should pay, "when deposited," $14,616.67 to Croissant and deliver the $12,000 in bonds to Lorenz. Under its terms Cleary, not a signatory, was to pay all of the Trust Company expenses in connection with the escrow. November 21, 1927, another agreement was entered into between the same parties with Cleary an additional signatory. This contract was substantially the same as the November 11th escrow instrument, except that the provision for bonds to Lorenz is omitted and Cleary guarantees the Trust Company's expenses, and on page 3 it is provided that the Trust Company should disregard all instructions of November 11, 1927. There is no provision for dis-

bursement of any kind to Cleary in either this or the November 11th instrument.

The Trust Company insists that the alleged escrow of November 26, 1927, is spurious. The original of the instrument is not in evidence and the foundation of the action is a carbon copy introduced by Cleary. Most of the provisions of this instrument are the same as those in the escrow agreement of November 11th and November 21st, but under it Cleary's guarantee of the escrow charges is limited to $150; Site 4 has been eliminated; the signature for the Lumber Company is different; and in addition to the disbursal directions in the prior instruments the Trust Company is directed to "deliver One Hundred Thousand Dollars in bonds to William J. Cleary, when certified, also $10,000.00 cash and stock."

Cleary had the burden of proving the escrow agreement on which he relies, its acceptance by the Trust Company, its breach by that Company and his damages resulting. In proving the breach he was required to prove fulfillment of the conditions precedent to that obligation, deposits of money, etc., as he charges in one count, or the anticipatory breach by the Trust Company waiving fulfillment as he charges in the other count. The Trust Company's burden was to establish ratification by Cleary of its delivery of the Lumber Company bonds to Kirkeby, Watts & Company, should proof be made by Cleary of the several elements hereinabove mentioned. The burdens imply the requirements of a preponderance of the evidence and, where there was any evidence in favor of the party having the burden, the issue thereon was for the jury, unless on all the evidence, considered favorably to the one having the burden, with all reasonable, favorable and legal inferences therefrom, the minds of reasonable men could come to only one conclusion; and finally, where any issue of fact was for the jury,

we should not, especially on the second successive verdict in favor of Cleary, set the verdict aside unless the rule of manifest weight is clearly applicable.

The essential issue in the case was the alleged escrow agreement of November 26th. Cleary testified that he signed the November 21st agreement without reading it and, later, reading his carbon copy thereof, discovered that Site 4 was improperly included and that no provision was made for him in exchange for his properties, and that he brought these matters to the attention of Marriott, a Trust Company official who died before the trial. The inference from the testimony of Cleary and Attorney Powell is that Marriott was to rewrite the instrument. Cleary says thereafter the original and a carbon copy of the November 26th instrument were delivered to his office, compared by him and Powell, and on Saturday morning, November 26th, executed by the several parties at the Trust Company's offices. Powell corroborates Cleary on this point. Cleary says he saw the original later, at the Trust Company's office, on four occasions, each time with an attorney. The testimony of one attorney at the trial and the deposition of Powell, then deceased, read at the trial, corroborate Cleary. The other two, one a master in chancery, were not offered as witnesses. The fact that they were not offered is relied upon by the Trust Company as affecting adversely the truth of Cleary's story. We see no reason why Cleary should be bound to produce these latter two witnesses. He made his proof by offering the instrument, telling his story and offering some corroborative testimony. The Trust Company admits the two witnesses were available and it could have called them. The two attorneys who testified, identified the disputed document dated November 26th, as the one which they had seen and compared with the original at the Trust Company office and in the presence of a Company

official now deceased. Powell testified he also saw the original at his office when Cleary brought it and the copy to him before it was executed.

At the trial Trust Company's counsel sought at length to gain admissions from Cleary that pages 1 and 3 of the disputed document were carbon copies of pages 1 and 3 of the November 21st instrument. It was the theory of the Trust Company in the trial court, that the disputed document is spurious, having been manufactured by using pages 1 and 3 of Cleary's copy of the valid November 21st agreement and a carbon copy of a false page 2. Cleary refused to make the admissions sought and steadfastly replied that he could not admit what he did not know. The original of the November 21st instrument is in evidence and Cleary's copy thereof was not produced at the trial. A comparison of the November 21st and November 26th documents leaves no doubt that pages 1 and 3 in the latter are carbon copies of pages 1 and 3 of the former.

Cleary says that when he first saw the original November 26th document and its disputed copy, after November 21st, 1927, both were unsigned. He thus negatives the possibility that pages 1 and pages 3 of the November 21st and November 26th documents are originals and carbon copies. One of his attorneys by cross-examination of a Trust Company employee, brought out testimony of a custom of the Trust Company, indulged in 1927, to suggest that it had rewritten page 2 of the November 21st instrument and with it and pages 1 and pages 3 built the original and copy of the disputed instrument. His other attorney argued to the jury that it was impossible for pages 1 and pages 3 to be originals and carbon copies.

Thus, the jury had contradictory theories on behalf of Cleary: First, the testimony of Cleary and the argument of one of his attorneys that there was no possibility that pages 1 and pages 3 of the November

21st and November 26th documents were originals and carbon copies; Second, the other suggested by his other attorney in cross-examination, that pages 1 and pages 3 were originals and carbon copies, with page 2 rewritten by the Trust Company. On the other hand the theory of the Trust Company is that pages 1 and pages 3 were originals and carbon copies with page 2 spurious, neither drawn nor known nor accepted by it.

The jury according to its verdict must have found either that pages 1 and pages 3 of the November 21st and November 26th documents were not originals and carbon copies, or that they were originals and carbon copies with page 2 having been drawn and inserted by the Trust Company as suggested by the cross-examination. If the first alternative, Cleary in his brief in effect admits, and from a comparison of the instruments we must conclude, that the jury was in error; and if the second alternative, we must set the verdict aside, based as it is on the mere suggestion under cross-examination without more, as being manifestly against the weight of the evidence.

In his brief Cleary says that the first and last pages of November 26th agreement "appear to be carbon copies of the first and third pages of the November 21st agreement" and that page 2 could readily have been recopied and that, "according to the way the Trust Company did business in 1927, it would not have had the entire agreement recopied" and that it would "have been reasonable for it to have used carbon copies of pages 1 and 3 of the November 21st agreement and have rewritten page 2 and have the new agreement executed." He then argues that different kinds of ink were used in the signatures, indicating the signatures were made at different times. The theory of the Trust Company is the same here as it was in the trial court.

We cannot presume that the verdict of the jury would have been the same had the issue been as it is

presented here. The case was not submitted clearly to the jury; there were no instructions on the vital element—the disputed escrow—which outlined the theories of the parties. The judgment must be reversed.

There are conflicts in the evidence upon the character of the disputed instruments and two juries have decided the issue in Cleary's favor. It is our opinion he should have an opportunity to present evidence to sustain the theory which he has adopted in this court and, therefore, the cause should be remanded. If retried, the case should be kept under close control by the court in order that the trial be free from irrelevancies which beclouded and prolonged unduly the former trial; should be considered on the definite theories which now appear, based on the fact that pages 1 and 3 of the disputed document are carbon copies of pages 1 and 3 of the November 21st agreement; and the trial court should see that the different theories are presented to the jury with all available helpful testimony and suitable instructions on the vital issue.

For the reasons given the judgment of the municipal court is reversed and the cause is remanded with directions.

*Reversed and remanded with directions.*

HEBEL, J., concurs.

MR. PRESIDING JUSTICE BURKE, dissenting in part: In my opinion Mr. Cleary has not made out a case and judgment should be entered for the Chicago Title and Trust Company. He does not have a cause of action and further time and money should not be consumed in fruitless litigation.